## Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN ASSOCIATION FOR JUSTICE** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CERTAIN UNDERWRITERS AT LLOYD'S** | ) | Case No. 1:21-cv-00847-JDB |
| **LONDON SUBSCRIBING TO** | ) | |
| **SHOWSTOPPERS POLICY CERTIFICATE** | ) | |
| **NO. CR0314627, SPECIFICALLY** | ) | |
| **SYNDICATES 2623, 0623, 033, AND 4141** | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

## DEFENDANTS' AMENDED ANSWER & AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIMS AGAINST PLAINTIFF

Defendants Certain Underwriters at Lloyd's London Subscribing to Showstoppers Policy Certificate No. CR0314627 ("Underwriters") hereby file their Answer to Plaintiff American Association for Justice's ("AAJ") Amended Complaint and Counterclaims for Declaratory Judgment. Underwriters deny that AAJ is entitled to the judicial declaration sought or to any of the other relief sought and will show the Court that it is Underwriters who are entitled to relief in this matter. Underwriters answer AAJ's Amended Complaint as follows:

## PARTIES

1.

Underwriters admit the allegations of Paragraph 1 of AAJ's Amended Complaint on information and belief.

2.

Underwriters admit that they subscribe to Showstoppers Policy Certificate No. CR0314627 (the "Policy") issued to AAJ. Underwriters further admit that they are participants in the Lloyd's,

London insurance market. Underwriters deny as stated all remaining allegations of Paragraph 2 not admitted herein.

## JURISDICTION & VENUE

3.

Underwriters admit the allegations contained in Paragraph 3 of AAJ's Amended Complaint.

4.

Underwriters admit the allegations contained in Paragraph 4 of AAJ's Amended Complaint.

## FACTS COMMON TO BOTH COUNTS

### Summary of Action

5.

Underwriters admit that this action arises out of the cancellation of AAJ's 2020 Annual Convention. Underwriters further admit that they denied AAJ's claim for coverage. Underwriters deny that the Policy's Communicable Disease exclusion is inapplicable. Underwriters deny that AAJ is entitled to recovery. Underwriters deny all remaining allegations contained in Paragraph 5 not admitted herein.

### Description of AAJ and its Conventions

6.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 6 and, therefore, the allegations are denied.

7.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 7 and, therefore, the allegations are denied.

8.

Underwriters admit that AAJ procured event cancellation insurance for its annual convention and other conventions. Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the remaining allegations contained in Paragraph 8 and, therefore, the allegations are denied.

9.

Underwriters admit the allegations contained in Paragraph 9 of AAJ's Amended Complaint.

10.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 10 and, therefore, the allegations are denied.

**<u>The Policy</u>**

11.

Underwriters admit the allegations contained in Paragraph 11 of AAJ's Amended Complaint.

12.

Underwriters admit the allegations contained in Paragraph 12 of AAJ's Amended Complaint.

13.

Underwriters admit the allegations contained in Paragraph 13 of AAJ's Amended Complaint.

14.

Underwriters admit the allegations contained in Paragraph 14 of AAJ's Amended Complaint.

15.

The terms, conditions, and other provisions of the Policy speak for themselves. To the extent that AAJ's characterization of the Policy contained in Paragraph 15 differs from, misrepresents, or misconstrues the terms, conditions, and other provisions of the Policy, these allegations are denied. Underwriters deny all allegations of Paragraph 15 not admitted herein.

16.

The terms, conditions, and other provisions of the Policy speak for themselves. To the extent that AAJ's characterization of the Policy contained in Paragraph 16 differs from, misrepresents, or misconstrues the terms, conditions, and other provisions of the Policy, these allegations are denied. Underwriters deny all allegations of Paragraph 16 not admitted herein.

17.

The terms, conditions, and other provisions of the Policy speak for themselves. To the extent that AAJ's characterization of the Policy contained in Paragraph 17 differs from, misrepresents, or misconstrues the terms, conditions, and other provisions of the Policy, these allegations are denied. Underwriters deny all allegations of Paragraph 17 not admitted herein.

18.

The terms, conditions, and other provisions of the Policy speak for themselves. To the extent that AAJ's characterization of the Policy contained in Paragraph 18 differs from, misrepresents, or misconstrues the terms, conditions, and other provisions of the Policy, these allegations are denied. Underwriters deny all allegations of Paragraph 18 not admitted herein.

19.

The terms, conditions, and other provisions of the Policy speak for themselves. To the extent that AAJ's characterization of the Policy contained in Paragraph 19 differs from, misrepresents, or misconstrues the terms, conditions, and other provisions of the Policy, these allegations are denied. Underwriters deny all allegations of Paragraph 19 not admitted herein.

20.

The terms, conditions, and other provisions of the Policy speak for themselves. To the extent that AAJ's characterization of the Policy contained in Paragraph 20 differs from, misrepresents, or misconstrues the terms, conditions, and other provisions of the Policy, these allegations are denied. Underwriters deny all allegations of Paragraph 20 not admitted herein.

21.

The terms, conditions, and other provisions of the Policy speak for themselves. To the extent that AAJ's characterization of the Policy contained in Paragraph 21 differs from, misrepresents, or misconstrues the terms, conditions, and other provisions of the Policy, these allegations are denied. Underwriters deny all allegations of Paragraph 21 not admitted herein.

22.

The terms, conditions, and other provisions of the Policy speak for themselves. To the extent that AAJ's characterization of the Policy contained in Paragraph 22 differs from, misrepresents, or misconstrues the terms, conditions, and other provisions of the Policy, these allegations are denied. Underwriters deny all allegations of Paragraph 22 not admitted herein.

**Cancellation of the 2020 Convention**

23.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 23 and, therefore, the allegations are denied.

24.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 24 and, therefore, the allegations are denied.

25.

The contents of the April 17, 2020 email from Events DC to AAJ speak for themselves. Underwriters deny all remaining allegations of Paragraph 25 not admitted herein.

26.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 26 and, therefore, the allegations are denied.

27.

The contents of the April 20, 2020 announcement regarding the Convention Center speak for themselves. Underwriters deny all remaining allegations of Paragraph 27 not admitted herein.

28.

Underwriters admit the allegations contained in Paragraph 28 of AAJ's Amended Complaint.

29.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 29 because Paragraph 29 of the Amended Complaint does not provide any citations to the referenced announcement. Therefore, the allegations are denied.

30.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 30 and, therefore, the allegations are denied.

31.

The contents of the April 29, 2020 email from Events DC speak for themselves. Underwriters deny all remaining allegations of Paragraph 31 not admitted herein.

32.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 32 and, therefore, the allegations are denied.

33.

The contents of the April 23, 2020 email from Events DC regarding the cancellation of the 2020 Convention speak for themselves. Underwriters deny all allegations of Paragraph 33 not admitted herein.

34.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 34 and, therefore, the allegations are denied.

35.

Underwriters admit the allegations contained in Paragraph 35 of AAJ's Amended Complaint.

36.

Underwriters admit the allegations contained in Paragraph 36 of AAJ's Amended Complaint.

37.

The contents of the March 11, 2020 press release from Events DC regarding the cancellation of the 2020 Convention speak for themselves. Underwriters deny all allegations of Paragraph 37 not admitted herein.

38.

Underwriters admit the allegations contained in Paragraph 38 of AAJ's Amended Complaint.

39.

Underwriters admit the allegations contained in Paragraph 39 of AAJ's Amended Complaint.

40.

Underwriters admit the allegations contained in Paragraph 40 of AAJ's Amended Complaint.

41.

Underwriters admit the allegations contained in Paragraph 41 of AAJ's Amended Complaint.

42.

Underwriters admit the allegations contained in Paragraph 42 of AAJ's Amended Complaint.

43.

The allegations contained in Paragraph 43 of AAJ's Amended Complaint state a legal conclusion to which no response is required, and Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 43. To the extent that a further response is required, Underwriters deny the allegations of Paragraph 43.

44.

The allegations contained in Paragraph 44 of AAJ's Amended Complaint state a legal conclusion to which no response is required, and Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 44. To the extent that a further response is required, Underwriters deny the allegations of Paragraph 44.

45.

The allegations contained in Paragraph 45 of AAJ's Amended Complaint state a legal conclusion to which no response is required, and Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 45. To the extent that a further response is required, Underwriters deny the allegations contained in Paragraph 45.

46.

Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 46 and, therefore, the allegations are denied.

47.

The allegations contained in Paragraph 47 of AAJ's Amended Complaint state a legal conclusion to which no response is required. To the extent that a further response is required, Underwriters deny the allegations contained in Paragraph 47.

48.

The allegations contained in Paragraph 48 of AAJ's Amended Complaint state a legal conclusion to which no response is required. To the extent that a further response is required, Underwriters deny the allegations contained in Paragraph 48.

49.

The allegations contained in Paragraph 49 of AAJ's Amended Complaint state a legal conclusion to which no response is required, and Underwriters lack information or knowledge sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 49. To the extent that a further response is required, Underwriters deny the allegations contained in Paragraph 49.

50.

The allegations contained in Paragraph 50 of AAJ's Amended Complaint state a legal conclusion to which no response is required. To the extent that a further response is required, Underwriters deny the allegations contained in Paragraph 50.

51.

The allegations contained in Paragraph 51 of AAJ's Amended Complaint state a legal conclusion to which no response is required. To the extent that a further response is required, Underwriters deny the allegations contained in Paragraph 51.

52.

Upon information and belief, Underwriters admit the allegations contained in Paragraph 52 of AAJ's Amended Complaint.

53.

The allegations contained in Paragraph 53 of AAJ's Amended Complaint state a legal conclusion to which no response is required. To the extent that a further response is required, Underwriters deny the allegations contained in Paragraph 53.

### AAJ's Insurance Claim and the Underwriters' Denial

54.

Underwriters admit the allegations contained in Paragraph 54 of AAJ's Amended Complaint.

55.

Underwriters admit the allegations contained in Paragraph 55 of AAJ's Amended Complaint.

56.

The contents of Underwriters' denial letter speak for themselves. Underwriters admit that they denied coverage for AAJ's claim via correspondence dated July 21, 2020. Underwriters deny all remaining allegations of Paragraph 56 not admitted herein.

57.

Underwriters admit the allegations contained in Paragraph 57 of AAJ's Amended Complaint.

58.

Underwriters admit that Underwriters and their representatives and AAJ and its representatives communicated regarding AAJ's claim for coverage and the 2020 Convention following the issuance of Underwriters' July 21, 2020 letter. Underwriters deny all remaining allegations of Paragraph 58 not admitted herein.

59.

The contents of Underwriters' November 2, 2020 letter speak for themselves. Underwriters admit that they dispute AAJ's contention that the venue had been requisitioned. Underwriters deny all remaining allegations of Paragraph 59 not admitted herein.

60.

Underwriters admit the allegations contained in Paragraph 60 of AAJ's Amended Complaint.

61.

The contents of Underwriters' December 8, 2020 letter speak for themselves. Underwriters deny all remaining allegations of Paragraph 61 not admitted herein.

62.

Underwriters admit the allegations contained in Paragraph 62 of AAJ's Amended Complaint. Further, Underwriters deny the allegations contained in footnote 1 to Paragraph 47 of AAJ's Amended Complaint.

63.

Underwriters deny the allegations contained in Paragraph 63 of AAJ's Amended Complaint.

64.

Underwriters deny the allegations contained in Paragraph 64 of AAJ's Amended Complaint.

65.

Underwriters deny the allegations contained in Paragraph 65 of AAJ's Amended Complaint.

66.

Underwriters deny the allegations contained in Paragraph 66 of AAJ's Amended Complaint.

67.

Underwriters deny the allegations contained in Paragraph 67 of AAJ's Amended Complaint.

68.

Underwriters deny the allegations contained in Paragraph 68 of AAJ's Amended Complaint.

69.

Upon information and belief, Underwriters admit the allegations contained in Paragraph 69 of AAJ's Amended Complaint.

70.

Underwriters deny the allegations contained in Paragraph 70 of AAJ's Amended Complaint.

## COUNT I
### (Breach of Contract)

71.

Underwriters incorporate their responses to Paragraphs 1 through 70 as though fully set forth herein.

72.

Underwriters deny the allegations contained in Paragraph 72 of AAJ's Amended Complaint.

73.

Underwriters deny the allegations contained in Paragraph 73 of AAJ's Complaint, including all allegations and relief sought in the wherefore/*ad damnum* clause.

## COUNT II
### (Declaratory Judgement)

74.

Underwriters incorporate their responses to Paragraphs 1 through 73 as though fully set forth herein.

75.

Underwriters admit that a justiciable controversy exists between Underwriters and AAJ regarding the rights and obligations of the parties under the Policy with respect to AAJ's claim. Underwriters deny all remaining allegations of Paragraph 75 not admitted herein, including all allegations and relief sought in the wherefore/*ad damnum* clause.

## DENIAL OF MATTERS NOT SPECIFICALLY ADMITTED

Underwriters deny all allegations in AAJ's Amended Complaint that are not admitted expressly in this Answer.

## UNDERWRITERS' AFFIRMATIVE DEFENSES

By not stating an affirmative defense below, Underwriters do not waive the right to assert it later. By stating the following as affirmative defenses, Underwriters do not admit that they bear the burden of proof on any of the issues raised by such defenses. Underwriters reserve the right to amend this Answer to include any additional defense that may be revealed or become applicable based on information discovered through further investigation and discovery in this action.

## FIRST DEFENSE

AAJ's Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

AAJ is barred from obtaining relief against Underwriters because Underwriters' conduct was at all times reasonable, proper, in good faith, and in compliance with applicable law.

## THIRD DEFENSE

Underwriters at no time breached any contractual or other legal duty owed to AAJ.

## FOURTH DEFENSE

AAJ is barred from obtaining relief against Underwriters because in order to trigger coverage under Section 2 Coverage A – Event Cancellation, the cause of the cancellation or other loss must have been beyond the control of AAJ and other parties, including "any party who performs or would perform any essential function needed for the successful fulfillment of the Event." Events DC is unquestionably a party who performs "any essential function needed for the successful fulfillment of the Event," given that it is the owner and operator of the venue (the DC Convention Center) where the 2020 Convention would have been held. .  On April 15, 2020, Events DC entered into a Temporary Right of Entry Permit with the District of Columbia to begin work on constructing the alternate care site and ultimately an agreement to license the Convention Center to the District of Columbia for $1.69 million.  Events DC, who had never formally entered into a contract with AAJ to license the Convention Center, then notified AAJ that the Convention Center was going to be put to use as a temporary alternate care site.  Thus, the 2020 Convention was cancelled because Events DC voluntarily chose to allow the venue to be used for this other purpose and to not finalize a contract with AAJ on that basis.

## FIFTH DEFENSE

AAJ is barred from obtaining relief against Underwriters because the use of the Convention Center as an alternate care site does not constitute a requisition or confiscation of the Venue by local, national, or Federal government authorities. Events DC itself has admitted that no requisition of the Convention Center occurred. In an October 1, 2020 email from Events DC to AAJ, Events

DC replied as follows in response to a question from AAJ for any "directive or request that you or any other managers in your office may have received from the city or Mayor's office or other governmental entity relating to the use of the convention center for medical purposes":

> Events DC received no directive to deploy the alternate care site at the Walter E. Washington Convention Center, which in March 2020 was closed to conferences, expos and the like following the declaration of a public emergency and District of Columbia-imposed restrictions on large gatherings. As there existed space in the building for non-event use, the District, in association with FEMA, the U.S. Army Corps of Engineers, MedStar Health, and United Medical Center, constructed and will operate the site. District Mayor Muriel Bowser announced the project on April 20, 2020.

Because Events DC received no "directive to deploy the alternate care site at the Walter E. Washington Convention Center," then there can be no requisition of the Convention Center. Events DC chose to voluntarily make the Convention Center available to the District of Columbia for use as an alternate care site pursuant to an extensively negotiated agreement to license the use of the Convention Center to the District of Columbia for a licensing fee of more than $1.69 million. AAJ cannot point to any evidence that the use of the Convention Center was the product of anything other than Events DC entering into a commercial transaction with governmental authorities and healthcare providers to rent them space inside the Convention Center to fulfill the authorities' need for space to establish an alternate care site. For this reason, AAJ cannot trigger coverage under the Policy's coverage extension for Requisition or Confiscation of Venue.

## SIXTH DEFENSE

Pursuant to Section 8.8(i), there is no coverage under the Policy for any loss, damage, cost or expense directly or indirectly arising out of, contributed to by, or resulting from any infectious or communicable disease in humans which leads to any imposition of quarantine or restriction in movement of people by any government authority or national or international body or agency of any government. AAJ cancelled the Event that it seeks coverage for because of COVID-19.  On

April 10, 2020, AAJ cancelled its Opening Reception for the Event with the Grand Hyatt "due to the impact of the COVID-19 pandemic." On April 13, 2020, AAJ cancelled a Reception scheduled to take place during the Event at the National Portrait Gallery "due to the impact of the COVID-19 pandemic."  On April 14, 2020, AAJ's Chief Creative Officer explained in an email to Grand Hyatt: "*As you know, the COVID 19 pandemic impact on the DC community changes daily.  Mayor Bowser is now saying that based on modeling the District could see between 93,000 cumulative coronavirus infections and 220 death on the low end to more than 1,000 on the high end and the peak in possible infections and the need for hospital beds will come in late June or early July, later than originally expected. **This clearly makes holding an event at the venue for 2,000 guests inadvisable if not impossible. We can no longer expect even close to that number of members to travel to Washington, DC for such an event.***"  By April 15, 2020, AAJ had entered into a contract with a platform provider to host a virtual version of AAJ's Event.  By April 17, 2020, Events DC had agreed to license the Convention Center – where AAJ had been discussing with Events DC the prospect of holding AAJ's in-person Event in July 2020 – to the District of Columbia to maintain an alternate care site.  The Licensing Agreement between Events DC and the District of Columbia explains that "the Licensed Area shall serve as an [Alternate Care Site]…and provide a 'sufficiency of care' model meeting critical elements of healthcare for an infectious COVID-19 patient…to address COVID-19 patients…" Subsection (i) applies in this matter because COVID-19 is a communicable disease as described by the Communicable Disease Exclusion and because multiple national and international authorities, bodies, and agencies issued quarantines or restrictions in movement of people regarding COVID-19. Accordingly, because COVID-19 is a communicable disease that led to "any imposition of quarantine or restriction in movement of people" being issued by a "government authority or national or international body or agency of

any government," subsection (i) of the Communicable Disease Exclusion apply to bar coverage in this matter.

## SEVENTH DEFENSE

Pursuant to Section 8.8(ii), there is no coverage under the Policy for any loss, damage, cost or expense directly or indirectly arising out of, contributed to by, or resulting from any infectious or communicable disease in humans which leads to any travel advisory or warning being issued by any government authority or national or international body or agency of any government. AAJ cancelled the Event that it seeks coverage for because of COVID-19.  On April 10, 2020, AAJ cancelled its Opening Reception for the Event with the Grand Hyatt "due to the impact of the COVID-19 pandemic." On April 13, 2020, AAJ cancelled a Reception scheduled to take place during the Event at the National Portrait Gallery "due to the impact of the COVID-19 pandemic." On April 14, 2020, AAJ's Chief Creative Officer explained in an email to Grand Hyatt: "*As you know, the COVID 19 pandemic impact on the DC community changes daily.  Mayor Bowser is now saying that based on modeling the District could see between 93,000 cumulative coronavirus infections and 220 death on the low end to more than 1,000 on the high end and the peak in possible infections and the need for hospital beds will come in late June or early July, later than originally expected. This clearly makes holding an event at the venue for 2,000 guests inadvisable if not impossible. We can no longer expect even close to that number of members to travel to Washington, DC for such an event.*"  By April 15, 2020, AAJ had entered into a contract with a platform provider to host a virtual version of AAJ's Event.  By April 17, 2020, Events DC had agreed to license the Convention Center – where AAJ had been discussing with Events DC the prospect of holding AAJ's in-person Event in July 2020 – to the District of Columbia to maintain an alternate care site.  The Licensing Agreement between Events DC and the District of Columbia explains that "the Licensed Area shall serve as an [Alternate Care Site]…and provide a

'sufficiency of care' model meeting critical elements of healthcare for an infectious COVID-19 patient…to address COVID-19 patients…" Subsection (ii) applies in this matter because COVID-19 is a communicable disease as described by the Communicable Disease Exclusion and because multiple national and international authorities, bodies, and agencies issued travel advisories or warnings regarding COVID-19. Accordingly, because COVID-19 is a communicable disease that led to travel advisories or warnings being issued by a "government authority or national or international body or agency of any government," subsection (ii) of the Communicable Disease Exclusion apply to bar coverage in this matter.

**EIGHTH DEFENSE**

Pursuant to Section 8.8(iv), there is no coverage under the Policy for any loss, damage, cost or expense directly or indirectly arising out of, contributed to by, or resulting from any infectious or communicable disease in humans which leads to any threat or fear of any infectious or communicable disease in humans, whether actual or perceived. AAJ cancelled the Event that it seeks coverage for because of COVID-19. On April 10, 2020, AAJ cancelled its Opening Reception for the Event with the Grand Hyatt "due to the impact of the COVID-19 pandemic." On April 13, 2020, AAJ cancelled a Reception scheduled to take place during the Event at the National Portrait Gallery "due to the impact of the COVID-19 pandemic." On April 14, 2020, AAJ's Chief Creative Officer explained in an email to Grand Hyatt: "*As you know, the COVID 19 pandemic impact on the DC community changes daily. Mayor Bowser is now saying that based on modeling the District could see between 93,000 cumulative coronavirus infections and 220 death on the low end to more than 1,000 on the high end and the peak in possible infections and the need for hospital beds will come in late June or early July, later than originally expected. **This clearly makes holding an event at the venue for 2,000 guests inadvisable if not impossible. We can no longer expect even close to that number of members to travel to Washington, DC for such an event.**"*

By April 15, 2020, AAJ had entered into a contract with a platform provider to host a virtual version of AAJ's Event.  By April 17, 2020, Events DC had agreed to license the Convention Center – where AAJ had been discussing with Events DC the prospect of holding AAJ's in-person Event in July 2020 – to the District of Columbia to maintain an alternate care site.  The Licensing Agreement between Events DC and the District of Columbia explains that "the Licensed Area shall serve as an [Alternate Care Site]…and provide a 'sufficiency of care' model meeting critical elements of healthcare for an infectious COVID-19 patient…to address COVID-19 patients…"

Subsection (iv) applies in this matter because COVID-19 is a communicable disease as described by the Communicable Disease Exclusion that led to the threat or fear of a communicable disease, as evidenced by the fact that, among other things, (1) Mayor Bowser's press release, which AAJ quotes in its Amended Complaint, explains that the Convention Center was being used as an alternate care site due to the fear of and threat of a potential increase in COVID-19 patients that would overwhelm local hospitals: "*While our goal is to never use the Convention Center, we must have the capacity to support a potential increase in COVID-19 patients.*"  (Dkt. 18, ¶ 27); and (2) AAJ's April 14, 2020 email to Grand Hyatt where AAJ explains: "*As you know, the COVID 19 pandemic impact on the DC community changes daily.  Mayor Bowser is now saying that based on modeling the District could see between 93,000 cumulative coronavirus infections and 220 death on the low end to more than 1,000 on the high end and the peak in possible infections and the need for hospital beds will come in late June or early July, later than originally expected. **This clearly makes holding an event at the venue for 2,000 guests inadvisable if not impossible. We can no longer expect even close to that number of members to travel to Washington, DC for such an event.**" Accordingly, because COVID-19 is a communicable disease that led to the threat

or fear of a communicable disease, subsection (iv) of the Communicable Disease Exclusion also applies to bar coverage in this matter.

## NINTH DEFENSE

Pursuant to Section 10.a, coverage under the Policy may be barred or limited to the extent that AAJ failed provide Underwriters with "all proofs, certificates, evidence, information or assistance which [Underwriters] may reasonably require."

## TENTH DEFENSE

Coverage under the Policy may be excluded, in whole or in part, to the extent that AAJ failed to mitigate its damages as required by Section 9.2.

## ELEVENTH DEFENSE

AAJ is not entitled to recover from Underwriters any interest, costs, or expenses incurred in connection with this action because Underwriters' coverage denial was proper and, therefore, AAJ will be unable to recover any relief against Underwriters, including but not limited to interest, costs, or expenses incurred in connection with this action.

## TWELFTH DEFENSE

AAJ's Complaint and each purported cause of action alleged against Underwriters therein is limited or barred to the extent that AAJ failed to perform any obligation under the Policy's terms and/or that all conditions precedent or subsequent to coverage have not been satisfied, including but not limited to (1) AAJ's failure to comply with Policy Section 10.a, a condition precedent to coverage; documents produced in this lawsuit demonstrate that by at least February 24, 2020, AAJ was aware of "any happening or circumstance which could give rise to a claim under this policy" but failed to provide notice to Underwriters until April 21, 2020; and (2) AAJ's failure to comply with Policy Section 9.1 by misrepresenting and concealing information regarding when AAJ first decided to cancel its Event and why AAJ decided to cancel its Event. Breach of Section 9.1 by

AAJ voids the Policy.

### THIRTEENTH DEFENSE

AAJ is not entitled to recover against Underwriters based on the allegations in the Complaint to the extent that it failed to comply with the terms, conditions, definitions, exclusions, and other provisions in the Policy or under applicable law, including but not limited to (1) AAJ's failure to comply with Policy Section 10.a, a condition precedent to coverage; documents produced in this lawsuit demonstrate that by at least February 24, 2020, AAJ was aware of "any happening or circumstance which could give rise to a claim under this policy" but failed to provide notice to Underwriters until April 21, 2020; (2) AAJ's failure to comply with Policy Section 9.1 by misrepresenting and concealing information regarding when AAJ first decided to cancel its Event and why AAJ decided to cancel its Event. Breach of Section 9.1 by AAJ voids the Policy; (3) AAJ's failure to trigger the Policy's principal insuring agreement of Section 2 Coverage A – Event Cancellation because the cause of the alleged loss was not beyond the control of Events DC, who is a "party who performs or would perform any essential function needed for the successful fulfillment of the Event."; (4) AAJ's failure to trigger the Policy's coverage extension for "Requisition or Confiscation of Venue" because the Convention Center was not requisitioned or confiscated by local, national or Federal government authorities. Instead, Events DC licensed the Convention Center to the District of Columbia in exchange for payment of at least $1.69 million; and (5) the Policy's Communicable Disease Exclusion applies because the alleged loss arose out of, was contributed by, or resulted from COVID-19 and subparts (i), (ii), and (iv) of the Policy's Communicable Disease Exclusion are satisfied.

### FOURTEENTH DEFENSE

Underwriters' liability under the Policy, if any, is dependent solely upon the Policy, which, as a written document, is the best evidence of its terms, conditions, definitions, exclusions, and

other provisions, and Underwriters plead such terms, conditions, definitions, exclusions, and other provisions as if copied herein *in extenso*.

## FIFTEENTH DEFENSE

AAJ's claims may be barred, in whole or in part, by the common law, statutes, or insurance laws of the jurisdiction whose law governs the Policy's interpretation, construction, and/or scope.

## SIXTEENTH DEFENSE

Coverage may be barred, in whole or in part, by public policy.

## SEVENTEENTH DEFENSE

AAJ's claims may be barred or limited by the doctrine of unjust enrichment.

## EIGHTEENTH DEFENSE

Coverage is barred due to AAJ's failure to satisfy a condition precedent to coverage under the Policy to notify Underwriters "as a matter of urgency and by the most expeditious means" of "any happening or circumstance which could give rise to a claim under this policy[.]" AAJ first reported the matter at issue in issue in this litigation on April 21, 2020. However, the record in this case demonstrates that AAJ was considering cancelling, curtailing, rescheduling or pushing the event to a virtual format and also was assessing the insurance coverage aspects of cancelling, curtailing or rescheduling the event as far back as February 2020:

- On February 24, 2020, Coleen Phalen, AAJ's Chief Creative Officer sends email marked high importance to AAJ's General Counsel, COO, CFO, and others with the subject "Coronavirus Follow Up." She notifies the group that she attended a webinar about Coronavirus hosted by ASAE (American Society of Association Executives) and sends the group a link from ASAE about "guidance and overview of the topic." She then says "*we are doing what we should and should continue to monitor the situation. I've also included our contract for DC which does give us*

*protection, but the hotel only agreed to within a two week period.  I'm again not as concerned with cancelling, but with insurance and what they'll cover.*" This same day, AAJ's CFO send an inquiry to AAJ's insurance broker about the possibility of buying back the CD Exclusion and/or whether the Policy responded to losses arising out of COVD-19.

- On March 20, 2020, AAJ's Chief Operating Officer sent an email to the Chief Creative Officer opining that "*based on what is out there at the moment I am beginning to think that July will need to be virtual.*" AAJ's Chief Creative Officer responded: "…*I'm contacting vendors and making plans for everything from full in person (not at all likely), hybrid, full virtual and postponement by a month…No matter what we are going to take a hit on AC [annual convention] though and we need to prepare.*"

- By at least April 3, 2020, AAJ had convened a task force on delivering a "Hybrid/Virtual Convention."  By April 8, 2020, AAJ had selected Communique as the provider to host the virtual event and by April 15, 2020, AAJ had entered into a contract with Communique.

- On April 10, 2020, AAJ invoked a Force Majeure clause with the Grand Hyatt hotel to withdraw from a contract to rent space for the convention's Opening Reception "*due to the impact of the COVID-19 pandemic.*" After pushback from the Grand Hyatt, on April 14, AAJ argued to Grand Hyatt that the COVID-19 pandemic "*clearly makes holding an event at the venue [Grand Hyatt] for 2000 guests inadvisable if not impossible.*"

23

- On April 13, 2020, AAJ invoked a Force Majeure clause with the National Portrait Gallery to withdraw from a contract to rent the Gallery for a reception "due to the impact of the COVID-19 pandemic."

Thus, AAJ first began expressing concerns both internally and externally regarding whether the Policy would respond to COVID-19-related losses at least by February 24, 2020 and was taking active steps towards cancelling, curtailing, rescheduling or pushing the event to a virtual format, but failed to provide notice to Underwriters until April 21, 2020.  Accordingly, coverage for AAJ's claim is precluded due to its failure to satisfy the condition precedent of Section 10.a.

## NINETEENTH DEFENSE

Coverage is barred by Section 9.1 of the Policy, which provides that "[a]ny fraud, misstatement or concealment…in the making of a claim or otherwise howsoever, shall render this insurance void and all claims hereunder shall be forfeited" because documents and information AAJ submitted to Underwriters in connection with AAJ's claim for coverage under the Policy contained inaccurate and misleading statements as to when and why AAJ cancelled the Event. Specifically, AAJ claimed that it cancelled the Event on April 21, 2020 "due solely to unavailability of the event venue due to the requisitioning of the Convention Center by local authorities." The timeline set forth above, however, reveals both of these statements cannot be true. AAJ was taking steps to cancel the Event weeks before AAJ gave Notice to Underwriters, and AAJ's internal and external communications clearly blame the COVID-19 pandemic as to why the Event cannot go forward. Thus, there is no coverage for AAJ's claim because AAJ's misstatements and concealment in connection with its claim submission voids the Policy and forfeits AAJ's ability to seek coverage for its claim.

## TWENTIETH DEFENSE

Underwriters affirmatively assert any other matter constituting avoidance or affirmative defense under applicable law, and Underwriters reserve the right to assert additional defenses that may be revealed or become applicable during further investigation and discovery in this action.

## COUNTERCLAIMS AGAINST PLAINTIFF/COUNTERCLAIM-DEFENDANT AMERICAN ASSOCIATION FOR JUSTICE FOR DECLARATORY RELIEF

Defendants/Counterclaim-Plaintiffs Certain Underwriters at Lloyd's London Subscribing to Showstoppers Policy Certificate No. CR0314627 ("Underwriters"), by and through their undersigned counsel, assert the following Counterclaims against Plaintiff/Counterclaim-Defendant American Association for Justice ("AAJ") and in support thereof, allege as follows:

## I.      INTRODUCTION

1.

This is an insurance coverage dispute in which AAJ seeks coverage from Underwriters for losses allegedly incurred due to AAJ's cancellation of its annual convention that was set to take place on July 11-15, 2020 at the Walter E. Washington Convention Center (the "Convention Center") in Washington, D.C. (the "Event").

2.

Underwriters issued Showstoppers Event Cancellation Insurance Certificate No. CR0314627 to AAJ for the policy period July 25, 2019 through July 20, 2020 (the "Policy"), which provides an Event Cancellation Limit of Indemnity of $3,183,000 for AAJ's Event.

3.

The Policy generally provides coverage to AAJ for its Net Loss "solely and directly" in consequence of Cancellation, Abandonment, Curtailment or Rescheduling of the Event, "all due to any unexpected cause beyond Your control and the control of the event organizer, the Participants and any of the sponsors or financial supporters of such parties and any party who

performs or would perform any essential function needed for the successful fulfillment of the Event. Inadequate sales or registrations shall not constitute an unexpected cause."

4.

The Policy also provides coverage for its Net Loss following the Cancellation, Abandonment, Curtailment or Rescheduling of the Event "solely and directly" in consequence of the requisition or confiscation of the Venue by local, national or federal government authorities.

5.

The Policy has certain conditions precedent to coverage that AAJ must satisfy in order to seek coverage under the Policy.  One such condition precedent that is relevant for this lawsuit is the Policy's Notice Provision, which states as follows:

> It is a condition precedent to Our liability that in the event of any happening or circumstance which could give rise to a claim under this policy, You shall;
>
> a.  report any loss or damage or any circumstance that could result in a claim as a matter of urgency by the most expeditious means to Aon Association Services a division of Affinity Insurance Services, Inc. at 1-800-424-8830 and subsequently confirmed in writing to 1120 20th Street NW, Washington, D.C. 20036. You agree at all times to provide, without expense to Us, all proofs, certificates, evidence, information or assistance which we may reasonably require. In the event of loss or damage by theft or dishonesty, immediate notice must also be given by You to the police or other relevant authorities.

(Dkt. 18-2, at p. 23).

6.

Section 9.1 of the Policy provides that "[a]ny fraud, misstatement or concealment…in the making of a claim or otherwise howsoever, shall render this insurance void and all claims hereunder shall be forfeited."

7.

Finally, the Policy also contains a Communicable Disease Exclusion, providing:

This insurance excludes any loss, damage, cost or expense directly or indirectly arising out of contributed to by or resulting from:

. . .

8.   any infectious or communicable disease in humans which leads to:

   (i)   any imposition of quarantine or restriction in movement of people by any government authority or national or international body or agency of any government; or

   (ii)   any travel advisory or warning being issued by any government authority or national or international body or agency of any government;

   (iii)   Swine Flu A (H1N1) or any mutant variation thereof;

   (iv)   any threat or fear of any infectious or communicable disease in humans (which for the avoidance of doubt includes Swine Flu A (H1N1 or any mutation or variation thereof), whether actual or perceived.

If We allege that by reason of this exclusion, any loss is not covered by this insurance the burden of proving the contrary shall be upon You.

8.

On January 31, 2020, the Secretary of Health and Human Services determined that a public health emergency existed—and had existed nationwide since January 27—as a result of confirmed cases of the novel coronavirus, and the United States Department of State issued a Level 4 "Do Not Travel" advisory for China due to the threat from the virus.

9.

On February 24, 2020 at 11:45 a.m., AAJ's Chief Creative Officer ("CCO"), Colleen Phalen, sent an email to AAJ's General Counsel, Chief Operating Officer ("COO"), Chief Financial Officer ("CFO") and others titled "Coronavirus follow up" that was tagged as a "Red Category" high importance email.  Ms. Phalen reported that she attended a webinar the previous week hosted by the American Society of Association Executives regarding the coronavirus, attached the slides, and noted that AAJ should continue to monitor "the situation."  Ms. Phalen

then continued: "I've also included our contract with DC which does give us protection, but the hotel only agreed to within a two week period. ***I'm again not as concerned with canceling, but with insurance and what they'll cover***."

10.

At 2:37 p.m. on that same day (February 24, 2020), AAJ's CFO, Thomas Fischetti, emailed AAJ's insurance broker, Claudia Lewis at McGriff Insurance Services:

> *Can you tell me how our event coverage address the Coronavirus? Do we have a communicable disease rider? Was one necessary or is the policy language broad enough to cover us? I understand that it's impossible to get now, but if we already have it?*

11.

The next morning, Ms. Lewis forwards Mr. Fischetti's email to Eileen Hoffman at Affinity, the coverholder for Underwriters. Ms. Lewis asks Ms. Hoffman whether Underwriters offers a Communicable Disease Rider on its event cancellation policies? Ms. Hoffman responds and reminds Ms. Lewis that AAJ's Policy has a Communicable Disease Exclusion and cites the text of the Exclusion.

12.

Ms. Lewis then emails Mr. Fischetti at AAJ, attaches a copy of the Policy, and explains:

> *This policy does exclude Communicable Diseases (Section 8 General Exclusions) and the exclusion is located on Page 11 of 15 (19th page of the complete document). I am waiting for the insurance carrier to let me know if this coverage is available and will then circle back to you.*

13.

Seven minutes later, Ms. Lewis then sends a response to Ms. Hoffman as follows:

> *I had already reviewed the Exclusion and was just wondering if coverage could be bought back. Please approach your underwriters on our client's behalf for the additional premium to include communicable disease excluding coronavirus.*

14.

Ms. Hoffman responds on February 27, 2020, informing Ms. Lewis that she discussed with underwriters and they are "not able to offer a buy-back for the communicable disease coverage at this time."

15.

On March 5, 2020, Events DC—the organization that owns and operates the Convention Center—followed up with AAJ regarding the status of the License Agreement that Events DC had sent to AAJ on December 17, 2019 so that AAJ could formally rent the space in the Convention Center for AAJ's July 2020 Event.  AAJ, however, did not respond.

16.

On March 17, 2020, AAJ's CCO emails Events DC, titled "NOT sounding any alarms," and inquires about whether the Event can be curtailed in scope and postponed: "*Currently is there any space available at the center for our show or a bit smaller in the month of August?*" Events DC responded the same day and copied the Convention Sales Manager who they said would be happy to assist AAJ.  It does not appear AAJ ever responded to the email.

17.

On March 20, 2020, AAJ's COO emailed AAJ's CCO: "I think we really need to think about what a virtual meeting would potentially look like if it came to that because it triggers things that need to start taking shape in the next week weeks."  Five minutes later, AAJ's CCO responded:

> *I've been working on this. On many ways. Can we do a call on this. There's so many layers to this. We have some financial responsibilities / minimums. We have some contracts.*
>
> *The model right now that seems likely is a hybrid. Some people in person (much lower than usual) and virtual. But I'm contacting vendors and **making plans for everything from full in person (not at all likely), hybrid, full virtual and postponement by a month**…No matter what we are going to take a hit on AC [Annual Convention] and we need to prepare.*

18.

On March 23, March 30, April 2, 2020, Events DC followed up again with AAJ regarding the status of the licensing agreement, but AAJ did not respond.

19.

On information and belief, by at least April 3, 2020, AAJ had created an internal "task force on delivering a hybrid/virtual convention."

20.

On April 7, 2020, Events DC followed up again with AAJ's CCO, asking her to "*please let me know if you are still planning on moving forward with your July 8-15, 2020 dates, we will need to secure your dates with a signed license agreement…we want to make sure your space is protected because we have several groups that are shifting and postponing their programs.*" AAJ's CCO responded the same day to Events DC and asked, "*Do you have an update on the operating status for the building and plans for federal or medical services in the building?*" Events DC responded the same day and said "No…the[re] are a lot of rumors out there, but we haven't been given any official word." On April 13, 2020, AAJ's CCO asked Events DC to re-send the license agreement and noted "***In light of the continuing impact of COVID-19 we are definitely considering all options***." Events DC sent the licensing agreement to AAJ on April 14, 2020.

21.

A spreadsheet circulated by AAJ's virtual event task force shows that on April 8, 2020, AAJ had selected a platform provider for a virtual version of the Event. The spreadsheet also indicates that on April 15, 2020, AAJ had executed a contract with the platform provider. The spreadsheet also contains a schedule showing that AAJ intended to hold a virtual version of the Event from July 13-16, 2020 (approximately the same dates that the in-person Event was supposed to be held).

22.

On April 10, 2020, AAJ's CCO sent an email to the Director of Events at the Grand Hyatt,

titled "AAJ July 11 2020 Event Notification," stating:

> *We are writing to notify the Grand Cuisine that AAJ will not be able to hold their Opening Reception on July 11, 2020 **due to the impact of the COVID-19 pandemic**.  We know this is a difficult time for all of us, but we will need to invoke Force Majeure and withdraw the event.*

23.

The Director of Events at the Grand Hyatt pushed back, however, and declined to agree to

allow AAJ to invoke Force Majeure.  AAJ's CCO responded on April 14, 2020:

> *The force majeure clause provides a party may terminate because of emergencies 'beyond the parties' control, making it inadvisable, illegal, or which materially affects a party's ability to perform its obligations under this Contract.' As you know, the COVID 19 pandemic impact on the DC community changes daily.  Mayor Bowser is now saying that based on modeling the District could see between 93,000 cumulative coronavirus infections and 220 death on the low end to more than 1,000 on the high end and the peak in possible infections and the need for hospital beds will come in late June or early July, later than originally expected. **This clearly makes holding an event at the venue for 2,000 guests inadvisable if not impossible. We can no longer expect even close to that number of members to travel to Washington, DC for such an event.** …*

24.

On April 13, 2020, AAJ's CCO sent an email to the National Portrait Gallery titled "AAJ

July Event notification," stating that "*AAJ will not be able to hold their Reception on July 13, 2020

due to the impact of the COVID-19 pandemic….we will need to invoke Force Majeure and

withdraw the event.*"

25.

In an email dated April 17, 2020, Melissa Riley, VP Convention Sales and Services for

Destination DC, informed AAJ and others as follows:

> *Dear Customers:*

*Like many convention centers across the country, Washington, DC's Walter E. Washing-ton Convention Center is being prepared to be used as a temporary alternate care site to help alleviate strain on DC's hospital system during the COVID-19 pandemic. Mayor Muriel E. Bowser has stressed that the goal is to be ready, but to not have to use the Walter E. Washington Convention Center in this way.*

*In coordination with Mayor Bowser's office, the Homeland Security and Emergency Management Agency (HSEMA), the DC Department of Health and Events DC, the Army Corp of Engineers will be responsible for overseeing the construction of the temporary site.*

*Once operational, the temporary facility will operate on a month-to-month basis until Mayor Bowser and her team determine that the additional capacity is no longer needed to support the COVID-19 efforts. At that time, Events DC will coordinate with the mayor to plan the resumption of its operations.*

*Since your organization is scheduled to meet in Washington, DC this year, we wanted to provide the latest update. Destination DC will be in touch as soon as possible to discuss potential contingency plans for your meeting.*

26.

AAJ first reported the cancellation of the Event to Underwriters on April 21, 2020, after purportedly receiving a call earlier that day from Events DC that the Convention Center would not be available to host AAJ's Event because it was being converted to an alternate care site in support of Washington, DC's response to COVID-19.

27.

In response to Underwriters' requests for additional information following AAJ's claim submission, AAJ sent a letter dated April 30, 2020 to Underwriters' appointed loss adjuster for AAJ's claim.

28.

In response to a question as to when the decision to cancel the Event was made, AAJ responded that "***The decision was made on April 21, 2020***, *after AAJ was informed that day by*

*Linda G. Erickson, Vice President, Sales Division at the Convention Center,* **that the facility was being requisitioned and would not be available for the dates of our event**."

29.

In response to an inquiry as to why the Event was cancelled, AAJ responded that "*The event was cancelled* **because the venue for the event was made unavailable due to requisitioning by the local authorities** *of the Convention Center for use as a medical care facility*." (*Id.* at p. 2, emphasis added.) Further, when questioned as to why it was unable to proceed with its Event, AAJ answered that "*The planned Annual Convention had to be cancelled* **because the event venue became unavailable due to its requisition for use as a care facility**."

30.

Finally, in response to the question as to what government or civil authority restrictions were in place, AAJ responded, "*While various restrictions were in place nationwide at the time the decision was made, including in the District of Columbia,* **the existence of any such restrictions was not a reason for the cancellation of the planned Annual Convention**."

31.

Underwriters investigated AAJ's claim and ultimately denied coverage via correspondence dated July 21, 2020 because the Policy's communicable disease exclusion applied to AAJ's claim.

32.

While Underwriters in good faith reconsidered the denial upon request by AAJ and reviewed additional documents and information provided by AAJ, Underwriters ultimately reaffirmed the coverage denial via correspondence dated December 8, 2020. AAJ then commenced this litigation.

33.

The facts set forth above give rise to multiple coverages defense that are each independently case-dispositive for Underwriters.

34.

First, AAJ has violated a condition precedent to coverage under the Policy to "report any loss or damage or any circumstance that could result in a claim as a matter of urgency by the most expeditious means."

35.

The record in this case demonstrates that AAJ was considering cancelling, curtailing, or rescheduling the Event or pushing it to a virtual format and also was assessing the insurance coverage aspects of cancelling the Event as far back as February 2020, two months before it provided notice to Underwriters.

36.

Because AAJ knew of the potential impact of COVID-19 on the Event and the possibility that it may make a claim on the Policy months before it gave notice to Underwriters and was taking actions indicative of its plan to cancel the in-person Event and pivot it to a virtual format weeks before it gave notice to Underwriters, AAJ has failed to satisfy its condition precedent to coverage to report "any loss or damage or any circumstance that could result in a claim as a matter of urgency by the most expeditious means" to Underwriters.

37.

Second, AAJ's April 30, 2020 letter submitted in connection with its claim submission contained misstatements and concealed information as to when and why AAJ cancelled the Event.

38.

Specifically, AAJ's April 30 letter averred that AAJ decided to cancel the Event on April 21 because it was informed that day that the Convention Center was being used as a COVID-19 care facility. However, AAJ's internal and external communications show that the cancellation decision began weeks before:

- On March 20, 2020, AAJ's CCO notified AAJ's CFO that she was "*contacting vendors and making plans for everything from full in person (not at all likely), hybrid, full virtual, and postponement by a month.*"

- By at least early April 2020, AAJ had already begun cancelling portions of its Event by invoking Force Majeure clauses with its vendors and arguing to vendors that AAJ could not expect thousands of people to travel to Washington, D.C. to attend an in-person Event.

- For example, on April 10, 2020, AAJ notified the Grand Hyatt stating that "*AAJ will not be able to hold their opening reception on July 11, 2020 due to the impact of the COVID-19 pandemic.*" After Grand Hyatt pushed back and declined to let AAJ invoke Force Majeure, AAJ's responded to Grand Hyatt on April 14, 2020, explaining that "*the COVID 19 pandemic impact on the DC community*" "*clearly makes holding an event at the venue for 2,000 guests inadvisable if not impossible. We can no longer expect even close to that number of members to travel to Washington, DC for such an event.*"

- On April 13, 2020, AAJ sent similar correspondence to the National Portrait Gallery, cancelling a July 13, 2020 reception "*due to the impact of the COVID-19 pandemic*" and invoking Force Majeure to "*withdraw the event.*"

- While AAJ was cancelling in-person portions of its Event, AAJ was simultaneously planning to hold a virtual event in lieu of its full in-person event, as demonstrated by the fact that by April 3, 2020, AAJ had created a task force on "delivering a Hybrid/Virtual Convention" and on April 8, 2020 chose a vendor to host the virtual event.

39.

AAJ's internal and external communications also demonstrate that AAJ also misstated to Underwriters why it cancelled the Event. AAJ told Underwriters that "*The loss arises from the necessary decision to cancel AAJ's planned Annual Conference due solely to unavailability of the event venue due to the requisitioning of the Convention Center by local authorities.*"

40.

However, AAJ's statement that the requisition of the venue is the sole cause of the cancellation cannot be true. Upon information and belief, AAJ first heard from Events DC regarding the possibility of the Convention Center not being available, because it was going to be used as an alternate care site, on April 17, 2020. However, as set forth above, AAJ was taking steps towards cancelling the live event and pivoting to a virtual event weeks before April 17, 2020 via contracting with a virtual event vendor and cancelling rental contracts for reception venues.

41.

Therefore, because AAJ made misstatements and concealed information in its claim submission materials, the Policy is void and AAJ's claim for coverage is forfeit.

42.

Third, AAJ's claim for coverage fails because in order to satisfy the Policy's principal insuring agreement of Section 2 Coverage A – Event Cancellation, the cause of the loss must have been beyond the control of AAJ and other parties, including "any party who performs or would perform any essential function needed for the successful fulfillment of the Event."

43.

Events DC is a party who performs "any essential function needed for the successful fulfillment of the Event," given that it is the owner and operator of the Convention Center where AAJ's Event was originally supposed to be held in-person.

44.

However, the record in this case demonstrates that the District of Columbia established an alternate care facility at the Convention Center to treat COVID-19 patients due to Events DC's voluntary decision to license the space to District of Columbia for this purpose pursuant to a license agreement that resulted in payment of $1.69 million to Events DC. Therefore, the unavailability of the Convention Center was not "beyond [Events DC's] control."

45.

Fourth, AAJ's claim for coverage fails because AAJ cannot satisfy the Policy's coverage extension for "Requisition or Confiscation of Venue," which provides that, subject to the Policy's other terms and conditions, Underwriters will indemnify AAJ for cancellations or other losses "solely and directly in consequence of the requisition or confiscation of the Venue by local, national or Federal government authorities."

46.

Events DC itself has admitted that no requisition of the Convention Center occurred.

47.

In an October 1, 2020 email from Events DC to AAJ, Events DC replied as follows in response to a question from AAJ for any "directive or request that you or any other managers in your office may have received from the city or Mayor's office or other governmental entity relating to the use of the convention center for medical purposes":

> Events DC received no directive to deploy the alternate care site at the Walter E. Washington Convention Center, which in March 2020 was closed to conferences, expos and the like following the declaration of a public emergency and District of Columbia-imposed restrictions on large gatherings. As there existed space in the building for non-event use, the District, in association with FEMA, the U.S. Army Corps of Engineers, MedStar Health, and United Medical Center, constructed and will operate the site. District Mayor Muriel Bowser announced the project on April 20, 2020.

48.

If Events DC received no "directive to deploy the alternate care site at the Walter E. Washington Convention Center," then there can be no requisition of the Convention Center.

49.

Rather, the record in this case demonstrates that Events DC chose to voluntarily make the Convention Center available to the District of Columbia for use as an alternate care site via an extensively negotiated license agreement under which the District of Columbia paid Events DC a licensing fee of more than $1.69 million to use the Convention Center.

50.

Because the use of the Convention Center as an alternate care site was the product of a multi-million-dollar arms-length transaction, and not a requisition by the District of Columbia, AAJ's claim cannot satisfy the Policy's coverage extension for Requisition or Confiscation of Venue.

51.

Fifth, AAJ's claim for coverage fails because the Policy's Communicable Disease Exclusion precludes coverage.

52.

The preamble of Section 8 of the Policy provides that that the Policy "excludes any loss, damage, cost or expense directly or indirectly arising out of contributed to by or resulting from" the excluded perils.  Further, the Communicable Disease Exclusion puts the burden on AAJ to demonstrate that the Exclusion does not apply when Underwriters assert that it does.

53.

AAJ cancelled the Event because of COVID-19.  On April 10, 2020, AAJ cancelled its Opening Reception for the Event with the Grand Hyatt "due to the impact of the COVID-19 pandemic." On April 13, 2020, AAJ cancelled a Reception scheduled to take place during the

Event at the National Portrait Gallery "due to the impact of the COVID-19 pandemic." On April

14, 2020, AAJ's Chief Creative Officer explained in an email to Grand Hyatt: *As you know, the*

*COVID 19 pandemic impact on the DC community changes daily. Mayor Bowser is now saying*

*that based on modeling the District could see between 93,000 cumulative coronavirus infections*

*and 220 death on the low end to more than 1,000 on the high end and the peak in possible infections*

*and the need for hospital beds will come in late June or early July, later than originally expected.*

***This clearly makes holding an event at the venue for 2,000 guests inadvisable if not impossible.***

***We can no longer expect even close to that number of members to travel to Washington, DC for***

***such an event.***" By April 15, 2020, AAJ had entered into a contract with a platform provider to

host a virtual version of AAJ's Event. By April 17, 2020, Events DC had agreed to license the

Convention Center – where AAJ had been discussing with Events DC the prospect of holding

AAJ's in-person Event in July 2020 – to the District of Columbia to maintain an alternate care site.

The Licensing Agreement between Events DC and the District of Columbia explains that "the

Licensed Area shall serve as an [Alternate Care Site]…and provide a 'sufficiency of care' model

meeting critical elements of healthcare for an infectious COVID-19 patient…to address COVID-

19 patients…"

54.

Subsections (i) and (ii) of the Communicable Disease Exclusion apply to bar coverage if a

communicable disease led to "any imposition of quarantine or restriction in movement of people"

or travel advisories or warnings being issued by a "government authority or national or

international body or agency of any government" and the loss directly or indirectly arose out of,

was contributed to by, or resulted from that disease.

55.

Multiple government authorities, as well as national and international bodies and agencies, issued quarantines, restrictions in movement of people, travel advisories, and travel warnings regarding COVID-19.

56.

Accordingly, because COVID-19 is a communicable disease that led to "any imposition of quarantine or restriction in movement of people" or travel advisories or warnings being issued by a "government authority or national or international body or agency of any government," subsection (i) and subsection (ii) of the Communicable Disease Exclusion apply to bar coverage in this matter.

57.

Subsection (iv) of the Communicable Disease Exclusion applies to bar coverage if AAJ's loss directly or indirectly arose out of, was contributed to by, or resulted from a communicable disease that led to the threat or fear of a communicable disease, whether actual or perceived.

58.

Subsection (iv) applies in this matter because COVID-19 is a communicable disease as described by the Communicable Disease Exclusion that led to the threat or fear of a communicable disease, as evidenced by the fact that, among other things, (1) Mayor Bowser's press release, which AAJ quotes in its Amended Complaint, explains that the Convention Center was being used as an alternate care site due to the fear of and threat of a potential increase in COVID-19 patients that would overwhelm local hospitals: "*While our goal is to never use the Convention Center, we must have the capacity to support a potential increase in COVID-19 patients.*"  (Dkt. 18, ¶ 27); and (2) AAJ's April 14, 2020 email to Grand Hyatt where AAJ explains: "*As you know, the COVID 19 pandemic impact on the DC community changes daily. Mayor Bowser is now saying that based on modeling the District could see between 93,000 cumulative coronavirus infections and 220 death*

*on the low end to more than 1,000 on the high end and the peak in possible infections and the need*

*for hospital beds will come in late June or early July, later than originally expected.* **This clearly**

**makes holding an event at the venue for 2,000 guests inadvisable if not impossible. We can no**

**longer expect even close to that number of members to travel to Washington, DC for such an**

**event.**"  Accordingly, because COVID-19 is a communicable disease that led to the threat or fear

of a communicable disease, subsection (iv) of the Communicable Disease Exclusion also applies

to bar coverage in this matter.

## II.    <u>JURISDICTION & VENUE</u>

59.

This Court has subject matter jurisdiction under 28 U.S.C. § 1332. (*See* Dkt. 1).

60.

Jurisdiction is proper under Federal Rule of Civil Procedure 13(a).  This action is also

brought under the authority of 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 for the

purpose of determining an actual controversy between the parties as set forth below.

61.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events

giving rise to the claims at issue occurred in this District.

## III.    <u>THE PARTIES</u>

62.

The parties to these Counterclaims are the same parties to the Amended Complaint filed

by Plaintiff/Counterclaim Defendant AAJ.

## IV.    <u>FACTUAL ALLEGATIONS</u>

**A.    <u>Policy Provisions</u>**

63.

The Policy's Schedule of Events includes the following relevant event:

The following is a listing of the events and venues covered by this policy. Changes made after issuance will be endorsed herein.

| **Event Name and Venue** | **Event Cancellation Limit of Indemnity** | **Event Dates From To** |
| --- | --- | --- |
| AAJ Annual Convention Washington Convention Center Washington, DC | $3,183,000 | 07/08/2020 to 07/15/2020 |

64.

Policy Section 1 – Definitions provides the following:

. . .

**Cancellation** means Your inability to open the **Event** prior to its commencement.

**Abandonment** means Your inability to keep open the Event after its commencement.

**Curtailment** means Your inability to open or keep open the Event for its original published duration or size.

**Rescheduling** means the unavoidable postponement of the Event to another time or the unavoidable relocation of the Event to an alternative location.

. . .

**Event** means trade show, consumer show, exhibition, fair, conference, convention, meeting, seminar, charity event, auction, gala dinner or other similar events.

. . .

**Venue** means the location where the **Event** is taking place.

65.

The Insuring Clause under Section 2. Coverage A – Event Cancellation provides the following:

**Insuring Clause**

Subject to all the terms, conditions, limitations and exclusions stated in this Insurance or of any attached Endorsement.

This insurance indemnifies You for Your Net Loss up to but not exceeding the Limit of Indemnity solely and directly in consequence of:

1.     Cancellation, Abandonment, Curtailment or Rescheduling of the Event;

. . .

all due to any unexpected cause beyond Your control and the control of the event organizer, the Participants and any of the sponsors or financial supporters of such parties and any party who performs or would perform any essential function needed for the successful fulfillment of the Event. Inadequate sales or registrations shall not constitute an unexpected cause.

66.

The following is provided under Section 2. Coverage A – Event Cancellation, Requisition or Confiscation of the Venue:

**Requisition or Confiscation of the Venue**
We will indemnify You for Your Net Loss up to but not exceeding the Limit of Indemnity for each Event, following the Cancellation, Abandonment, Curtailment or Rescheduling of the Event, solely and directly in consequence of the requisition or confiscation of the Venue by local, national or Federal government authorities.

67.

The following is provided under Section 8. General Exclusions:

This insurance excludes any loss, damage, cost or expense directly or indirectly arising out of contributed to by or resulting from:

. . .

8.     any infectious or communicable disease in humans which leads to:

    (i)     any imposition of quarantine or restriction in movement of people by any government authority or national or international body or agency of any government; or

    (ii)    any travel advisory or warning being issued by any government authority or national or international body or agency of any government;

    (iii)   Swine Flu A (H1N1) or any mutant variation thereof;

43

> (iv)   any threat or fear of any infectious or communicable disease in humans (which for the avoidance of doubt includes Swine Flu A (H1N1 or any mutation or variation thereof), whether actual or perceived.

> If We allege that by reason of this exclusion, any loss is not covered by this insurance the burden of proving the contrary shall be upon You.

68.

Section 10.a of the Policy provides as follows with respect to AAJ's obligation to provide

notice of circumstances which could give rise to a claim under the Policy:

> It is a condition precedent to Our liability that in the event of any happening or circumstance which could give rise to a claim under this policy, You shall;

> a.   report any loss or damage or any circumstance that could result in a claim as a matter of urgency by the most expeditious means to Aon Association Services a division of Affinity Insurance Services, Inc. at 1-800-424-8830 and subsequently confirmed in writing to 1120 20th Street NW, Washington, D.C. 20036. You agree at all times to provide, without expense to Us, all proofs, certificates, evidence, information or assistance which we may reasonably require. In the event of loss or damage by theft or dishonesty, immediate notice must also be given by You to the police or other relevant authorities.

69.

Section 9 – General Conditions and Warranties of the Policy provides, in relevant part:

> 1.   Any fraud, misstatement or concealment in the application attached hereto, or in the making of a claim or otherwise howsoever, shall render this insurance void and all claims hereunder shall be forfeited.

## B.     Timeline of the COVID-19 Pandemic and AAJ's Response Thereto

70.

During January 2020 the world began to appreciate that it was staring at a potential

pandemic emerging from the Wuhan area of China. By January 13, 2020 the World Health

44

Organization ("WHO") had reported the first case of the new pneumonia-like disease outside of China, in Thailand.[1]

71.

Before the month was out, the WHO had declared the novel coronavirus outbreak a Public Health Emergency of International Concern.[2] By then, 82 cases had been reported in 18 countries outside China, including the first case in the United States.[3]

72.

On January 31, 2020, the President of the United States issued Proclamation 9984 which restricted the movement of people by suspending and limiting the entry of certain categories of people who were physically present within the People's Republic of China during the 14-day period prior to their entry into the United States. The Proclamation discussed the background of the spread of the virus at length and stressed the importance of protecting persons within the United States from the threat of "this harmful communicable disease."[4]

---

[1] World Health Organization, WHO Statement on novel coronavirus in Thailand (Jan. 13, 2020) *available at* https://www.who.int/news/item/13-01-2020-who-statement-on-novel-coronavirus-in-thailand (last accessed on November 15, 2021).

[2] World Health Organization, *WHO Director-General's statement on IHR Emergency Committee on Novel Coronavirus (2019-nCoV)* (Jan. 30, 2020) *available at* https://www.who.int/director-general/speeches/detail/whodirector-general-s-statement-on-ihr-emergency-committee-on-novel-coronavirus-(2019-ncov) (last accessed on November 15, 2021).

[3] World Health Organization, *Novel Coronavirus (2019-nCoV) Situation Report - 10* (Jan. 20, 2020) *available at* https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200130-sitrep-10-ncov.pdf?sfvrsn=d0b2e480_2 (last accessed on November 15, 2021); Centers for Disease Control and Prevention, First Travel-related Case of 2019 Novel Coronavirus Detected in United States (Jan. 21, 2020) *available at* https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html (last accessed on November 15, 2021).

[4] Proclamation No. 9984, 85 Fed. Reg. 6709 (Jan. 31, 2020).

73.

Also, on January 31, 2020, the Secretary of Health and Human Services determined that a public health emergency existed—and had existed nationwide since January 27—as a result of confirmed cases of the novel coronavirus,[5] and the United States Department of State issued a Level 4 "Do Not Travel" advisory for China due to the threat from the virus.[6]

74.

By February 11, 2020, the novel coronavirus had been named SARS-CoV-2, and the disease it causes had been named COVID-19.[7]

75.

AAJ quickly recognized that the outbreak of COVID-19 could pose a threat to the Event.

76.

Indeed, less than two weeks after the novel coronavirus had been given its official name, on February 24, 2021, AAJ posed the following question to its insurance broker at McGriff Insurance Services regarding the scope of coverage provided by the Policy: "*Can you tell me how our event coverages address the Coronavirus? Do we have a communicable disease rider? Was one necessary or is the policy language broad enough to cover us? I understand that it's impossible to get now, but if we already have it?*" (*See* Dkt. 21-3).

---

[5] U.S. Department of Health & Human Services, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020) available at https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx (last accessed on November 15, 2021).

[6] U.S. Mission to China, *Travel Alert Level 4 Do Not Travel to China* (Jan. 31, 2020) available at https://china.usembassy-china.org.cn/travel-alert-level-4-do-not-travel-to-china/ (last accessed on November 15, 2021).

[7] *World Health Organization, WHO Director-General's remarks at the media briefing on 2019-nCoV on 11 February 2020* (Feb. 11, 2020) available at https://www.who.int/director-general/speeches/detail/who-directorgeneral-s-remarks-at-the-media-briefing-on-2019-ncov-on-11-february-2020 (last accessed on November 15, 2021).

77.

AAJ's questions as to how the Policy "address[es] the Coronavirus" and whether a "communicable disease rider" was "necessary" in order for the Policy to respond demonstrates that by at least February 24, 2020, AAJ had concerns regarding the impact of COVID-19 on the Event and whether the Policy would respond to such a loss.

78.

The same day that AAJ asked its broker about coverage under the Policy for the COVID-19, Collen Phalen, AAJ's Chief Creative Officer—who, upon information and belief, is the primary employee at AAJ responsible for planning the Event—sent an email with the subject "Coronavirus Follow Up" to AAJ's other executive officers, including its Chief Executive Officer, Chief Operations Officer, and General Counsel. A true and correct copy of this email is attached as Exhibit 1.

79.

In this February 24 email, Ms. Phalen sent the group guidance about COVID-19 and advises that AAJ "should continue to monitor the situation." In this email, Phalen further states "*I've also included our contract for DC which does give us protection, but the hotel only agreed to within a two week period. I'm again not as concerned with cancelling, but with insurance and what they'll cover.*" (*Id.*) (emphasis added).

80.

Like AAJ's inquiry to its broker, this email demonstrates that on February 24, 2020, AAJ appreciated that COVID-19 might impact the Event such that AAJ would need to tender a claim to the Policy.

81.

The WHO declared COVID-19 as a pandemic on March 11, 2020.

82.

At this time, certain large-scale, in-person events around the country began to cancel. For example, later on March 11, 2020, the National Basketball Association suspended its season[8] and on March 12, 2020, the NCAA cancelled the post-season tournaments for men's and women's college basketball.[9]

83.

In March 2020 and early April 2020 AAJ engaged in extensive internal and external communications regarding the inability of the Event to proceed in-person as planned due to the impact of COVID-19.

84.

For example, a lengthy email chain dated March 20, 2020 with the subject "Next Chapter", between Ms. Phalen and Anne Doohan, AAJ's Chief Operating Officer, demonstrates AAJ's understanding that it would not be able to host the Event in-person, and that it would need to be at least in a hybrid, if not wholly virtual, format:

> *Doohan: "Annual Convention: I think the show must go on even if virtual. There are so many things that take place at AC like elections, new president, etc….AAJ cannot afford to take a full hit in this fiscal year with no AC…I think we really need to think about what a virtual meeting would potentially look like if it came to that because it triggers things that need to start taking shape in the next few week…I do hope this is a non-issue but based on what is out there at the moment I am beginning to think that July will need to be virtual."*

---

[8] Scott Cacciola and Sopan Deb, *N.B.A. Suspends Season After Player Tests Positive for Coronavirus*, The New York Times (Mar. 11, 2020) available at https://www.nytimes.com/2020/03/11/sports/basketball/nba-seasonsuspended-coronavirus.html (last accessed on November 15, 2021).

[9] Alan Blinder, *N.C.A.A. Basketball Tournament Canceled Amid Coronavirus Outbreak*, The New York Times (Mar. 12, 2020) available at https://www.nytimes.com/2020/03/12/sports/ncaabasketball/ncaa-basketballtournament-coronavirus.html (last accessed on November 15, 2021).

> Phalen: "I've been working on this. On many ways. Can we do a call on this. There's so many layers to this. We have some financial responsibilities/minimums. We have some contracts…I'm contacting vendors and **making plans for everything from full in person (not at all likely), hybrid, full virtual and postponement by a month.**"
>
> Doohan: "Yes, I know you're all over it. Let's plan to talk next week. I just wanted to share fiscal year shift because it is not a possibility which helps frame this more."
>
> Phelan: "Got it!! Can we survive not having an ac in FYI 2020 but two in 2021? I think that would be the next question – I'll set a call for next week."
>
> Doohan: "Not having the 1 million this year would be devastating. Again, small bites…"

(The "March 20, 2020 Emails," attached hereto as Exhibit 2) (emphasis added).

85.

Further, in an email dated April 7, 2020 with the subject "Virtual look and feel" from Collen Phalen to Linda Lipsen, Anne Doohan, Anji Jesseramsing, Scott Gehrig, Meredith Burns and Thomas Fischetti, Phalen states

> **We're narrowing down a Virtual Show vendor and wanted to give you all a glimpse at the look and feel**. We went for a more "real" feel, so our members could feel they were experiencing something akin to a convention instead of just downloading sessions. This would include a networking lounge area and a virtual hall. **Waiting on a final bid and will route**.

(AAJ's "April 7, 2020 Email," attached hereto as Exhibit 3) (emphasis added).

86.

Next, in an email dated April 10, 2020 with the subject "AAJ July 11 2020 Event Notification" from Ms. Phalen to Gene Hunt and Paul Weiner with the Grand Hyatt Washington hotel, the site of the planned Opening Reception for the Event, Ms. Phalen states:

> We are writing to notify the Grand Cuisine that **AAJ will not be able to hold their Opening Reception on July 11, 2020 due to the impact of the COVID-19 pandemic.** We know this is a difficult time for all of us, but we will need to invoke Force Majeure and withdraw the event. We hope to look at rebooking the event in the future.

(AAJ's "April 10, 2020 Email," attached hereto as Exhibit 4) (emphasis added).

87.

After a back-and-forth exchange concerning whether AAJ was able to unilaterally terminate the contract pursuant to the force majeure clause, Ms. Phalen states "*We can no longer expect even close to that number of members to travel to Washington, DC, for such an event. This contract is also contingent on whether we hold a convention or on whether that convention ends up being an in person or virtual event.*" (*Id.*).

88.

In an email dated April 13, 2020 with the subject "AAJ July Event notification" from Ms. Phalen to Mary Beth Maggio with the National Portrait Gallery, the site of a planned July 13, 2020 reception for the Event, Ms. Phalen states: "*We are writing to notify the Portrait Gallery that AAJ will not be able to hold their Reception on July 13, 2020 due to the impact of the COVID-19 pandemic. We know this is a difficult time for all of us, but we will need to invoke Force Majeure and withdraw the event. We hope to look at rebooking the event in the near future.*" (AAJ's "April 13, 2020 Portrait Gallery Email," attached hereto as Exhibit 5) (emphasis added).

89.

Ms. Maggio responds to Ms. Phelan's email, stating "*I completely understand the necessity to cancel the reception due to the current impact and uncertainty of COVID-19*" and asks whether AAJ was interested in keeping the contract active for a later date or cancelling altogether." (*Id.*). Ms. Phelan confirms that "*unfortunately, at this time, we will have to cancel.*" (*Id.*).

90.

In an email dated March 17, 2020 with the subject "NOT Sounding Any Alarms" to Events DC, the owner and operator of the Convention Center, Ms. Phalen writes, "*I am NOT sounding any alarms, but I do want to just prepare. Currently is there any space available at the center for*

*our show or a bit smaller in the month of August? I figure it's a longshot but wanted to check.*"

(AAJ's "March 17, 2020 Events DC Email," attached hereto as Exhibit 6).

91.

After much back and forth, Events DC requests that AAJ confirm whether the Event was

still moving forward and requests:

> *Please let me know if you are still planning to move forward with your July 8-15, 2020 dates, we will need to secure your dates with a signed license agreement. My colleague Jannelle Austin Contracts Administrator re-issued your license agreement back in March* **and we want to be sure that your space is protected because we have several groups that are shifting and postposing their programs**.

(*Id.*).

92.

Ms. Phalen then requests that Events DC resend her AAJ's license agreement for the

Convention Center, adding that "***In light of the continuing impact of COVID-19 we are definitely***

***considering all options.***" (*Id.*) (emphasis added).

93.

In an email dated April 16, 2020 from Ms. Phelan to multiple AAJ employees with the

subject "Task Force on Delivering a Hybrid/Virtual Convention," Ms. Phelan attaches a document

named "Virtual Forum Development Timeline." (AAJ's "April 16, 2020 Email Thread," attached

hereto as Exhibit 7).

94.

The timeline attachment specified multiple action items, including "Platform provider

decision." According to this document, AAJ selected the virtual event vendor on April 8, 2020,

and the timeline attachment notes "*LMS is bluesky, VR platform is Communique.*" (*Id.*).

95.

Although AAJ first gave notice to Underwriters on April 21, 2020, AAJ's emails of April

7 and April 8, 2020 set forth above demonstrate that at least two weeks before giving notice to

Underwriters, AAJ knew that the Event would not be going forward in-person as planned and had

retained a vendor to provide a virtual event.

96.

AAJ alleges that it received the below email[10] from Events DC on April 17, 2020, which,

upon information and belief, was AAJ's first communications from Events DC that the Convention

Center could be used as an alternate care site:

> *Dear Customers:*
>
> *Like many convention centers across the country, Washington, DC's Walter E. Washing-ton Convention Center is being prepared to be used as a temporary alternate care site to help alleviate strain on DC's hospital system during the COVID-19 pandemic. Mayor Muriel E. Bowser has stressed that the goal is to be ready, but to not have to use the Walter E. Washington Convention Center in this way.*
>
> *In coordination with Mayor Bowser's office, the Homeland Security and Emergency Management Agency (HSEMA), the DC Department of Health and Events DC, the Army Corp of Engineers will be responsible for overseeing the construction of the temporary site.*
>
> *Once operational, the temporary facility will operate on a month-to-month basis until Mayor Bowser and her team determine that the additional capacity is no longer needed to support the COVID-19 efforts. At that time, Events DC will coordinate with the mayor to plan the resumption of its operations.*
>
> *Since your organization is scheduled to meet in Washington, DC this year, we wanted to provide the latest update. Destination DC will be in touch as soon as possible to discuss potential contingency plans for your meeting.*

(Dkt. 18-3).

---

[10] *See* Dkt. 18, ¶ 25.

97.

After receiving the April 17, 2020 announcement from Events DC that the Convention Center would be used as an alternate care site, AAJ still did not provide notice to Underwriters until four days later.

98.

That AAJ decided not to proceed with the planned in-person Event well before it provided notice to Underwriters is also revealed by the fact that AAJ refused to ever execute a license agreement for its use of the Convention Center for the Event with its owner and operator, Events DC.

99.

Upon information and belief, Events DC requires parties that rent space in the Convention Center for events to execute a license agreement that specifies the terms and condition of the party's use of the Convention Center.

100.

Events DC sent a draft of the License Agreement to AAJ for execution as early as December 17, 2019 and followed up with AAJ on the status of AAJ returning an executed copy of the Agreement on March 5, March 23, March 30, and April 2, 2020.

101.

As set forth above, however, starting in late February 2020, AAJ had serious doubts as to whether its Event could go forward and was engaged in active planning of a virtual event by mid-March 2020.

102.

Because AAJ had no intention of going forward with the Event at the Convention Center as planned, AAJ intentionally chose not to execute the license agreement with Events DC in order to lessen further obstacles towards pivoting its Event towards a virtual event.

**C.      The Convention Center's Use as an Alternate Care Site**

103.

AAJ has claimed throughout this litigation that the use of the Convention Center as an alternate care site constitutes a requisition that triggers coverage under the Policy.

104.

However, throughout the adjustment of the claim and in the leadup to AAJ's lawsuit and even after suit was filed, Underwriters repeatedly invited AAJ to provide any documents or information evidencing that the Convention Center was requisitioned. AAJ never did so. (*See* Dkt. 21-2).

105.

Productions by Events DC in this lawsuit show that no such documents exist.

106.

In an October 1, 2020 email from Events DC to AAJ, Events DC replied as follows in response to a question from AAJ for any "directive or request that you or any other managers in your office may have received from the city or Mayor's office or other governmental entity relating to the use of the convention center for medical purposes":

> Events DC received no directive to deploy the alternate care site at the Walter E. Washington Convention Center, which in March 2020 was closed to conferences, expos and the like following the declaration of a public emergency and District of Columbia-imposed restrictions on large gatherings. As there existed space in the building for non-event use, the District, in association with FEMA, the U.S. Army Corps of Engineers, MedStar Health, and United Medical Center, constructed and will operate the site. District Mayor Muriel Bowser announced the project on April 20, 2020.

(*See* Dkt. 21-1, Exhibit A).

107.

The record in this case demonstrates that Events DC chose to voluntarily make the Convention Center available to the District of Columbia for use as an alternate care site and then

ultimately negotiated an agreement to license the use of the Convention Center to the District of Columbia in exchange for payment of $1.69 million.

108.

Indeed, from the very beginning of the negotiations between Events DC and the authorities regarding utilizing the Convention Center as an alternate care site, the parties were clear that this use would proceed pursuant to a license agreement.

109.

In an April 8, 2020 email from an employee of the District of Columbia, he directs his colleague to contact an Events DC employee to discuss the "lease/license" process for the Convention Center. (*See* attached Exhibit 8).

110.

In an April 10, 2020 email from the District of Columbia to the U.S. Army Corps of Engineers, the District of Columbia clarifies that a license agreement would be needed for the Convention Center to be used as an alternative care site, stating "[t]he Convention Center does not reside in the inventory of the Department of General Services.  We understand that the intent is to enter into a 'use' agreement that allows USACE to have a contractor perform work at the Convention Center."  (*Id*.). This employee then directs the U.S. Army Corps of Engineers to contact Event DC's Senior Vice President to discuss "terms and language related to the agreement." (*Id*.).

111.

Later in this email thread, in an April 11, 2020 email, a District of Columbia employee thanks a U.S. Army Corps of Engineers employee for her time on a call and summarizes their call as stating that "DGS will engage Events DC to execute a use or license agreement for use of Convention Center."  (*Id*.).

112.

Later on April 11, 2020, the U.S. Army Corps of Engineers employee requests that the District of Columbia and Events DC to coordinate with the Corps during the negotiation of the license agreement. (*Id*.). This demonstrates that the negotiation of the licensing agreement was a complex, prolonged process that involving multiple parties engaged in arms-length negotiations.

113.

On April 15, 2020, the District of Columbia and Events DC entered into a "Temporary Right of Entry" Agreement that gave the District of Columbia the right to enter the Convention Center to begin the process of constructing an alternative care site. (*See* attached Exhibit 9). The Right of Entry Agreement stated that it would effective until the earlier of the completion of the alternative care site or Events DC and the District of Columbia entering into a formal license agreement. (*Id*)

114.

Events DC and the District of Columbia ultimately entered a license agreement dated September 29, 2020 pursuant to which the District of Columbia paid Events DC a licensing fee of more than $1.69 million to utilize the Convention Center as an alternate care site. (*See* License Agreement, attached hereto as Exhibit 10).

115.

The licensing agreement further provided that Events DC would have the ability to seek reimbursement for all costs incurred in making the Convention Center available to the District of Columbia before execution of the licensing agreement. (*Id*., Section 3D).

116.

Thus, the use of the Convention Center as an alternate care site was the product of a multi-million-dollar arms-length transaction, not a requisition by the District of Columbia.

**D.      AAJ's Loss Submission to Underwriters**

117.

On April 21, 2020, AAJ provided notice of the cancellation of the Event to Underwriters via Affinity, stating that AAJ was seeking all recovery available under the Policy "in consequence of cancellation of AAJ's Annual Convention due to unexpected cause beyond AAJ's control: requisition by local authority of the event venue[.]"

118.

AAJ alleged that earlier that day (April 21, 2020), Ms. Phelan received "official" word from Events DC that the Convention Center would be unavailable to host the Event because the Convention Center was being converted to an alternate care site.

119.

In response to Underwriters' requests for additional information following AAJ's claim submission, AAJ sent a letter dated April 30, 2020 to Peter Tocicki with Premier, Underwriters' appointed loss adjuster for AAJ's claim. (*See* AAJ's April 30, 2020 Letter, attached hereto as Exhibit 11).

120.

In response to a question as to when the decision to cancel the Event was made, AAJ responded that "***The decision was made on April 21, 2020***, *after AAJ was informed that day by Linda G. Erickson, Vice President, Sales Division at the Convention Center,* ***that the facility was being requisitioned and would not be available for the dates of our event***." (*Id*. at p. 1, emphasis added.)

121.

In response to an inquiry as to why the Event was cancelled, AAJ responded that "*The event was cancelled* ***because the venue for the event was made unavailable due to requisitioning by the local authorities*** *of the Convention Center for use as a medical care facility*." (*Id*. at p. 2,

emphasis added.) Further, when questioned as to why it was unable to proceed with its Event, AAJ answered that "*The planned Annual Convention had to be cancelled **because the event venue became unavailable due to its requisition for use as a care facility**.*" (*Id.*, emphasis added).

122.

Finally, in response to the question as to what government or civil authority restrictions were in place, AAJ responded, "*While various restrictions were in place nationwide at the time the decision was made, including in the District of Columbia, **the existence of any such restrictions was not a reason for the cancellation of the planned Annual Convention**.*" (*Id.*, emphasis added).

## V.    CAUSES OF ACTION

### Count I – Declaratory Judgment of No Coverage due to AAJ's Breach of the Condition Precedent to Coverage Regarding Timely Notice

123.

Underwriters re-allege each and every allegation contained in the above paragraphs as though fully set forth herein.

124.

Section 10.a of the Policy provides as follows with respect to AAJ's obligations to provide notice of circumstances which could give rise to a claim under the Policy:

> It is a condition precedent to Our liability that in the event of any happening or circumstance which could give rise to a claim under this policy, You shall;
>
> a.   report any loss or damage or any circumstance that could result in a claim as a matter of urgency by the most expeditious means to Aon Association Services a division of Affinity Insurance Services, Inc. at 1-800-424-8830 and subsequently confirmed in writing to 1120 20th Street NW, Washington, D.C. 20036. You agree at all times to provide, without expense to Us, all proofs, certificates, evidence, information or assistance which we may reasonably require. In the event of loss or damage by theft or dishonesty, immediate notice must also be given by You to the police or other relevant authorities.

125.

Underwriters first received notice of the cancellation of the Event from AAJ on April 21, 2020.

126.

AAJ, however, was aware of "any happening or circumstance which could give rise to a claim under this policy" more than two months before it gave notice to Underwriters.

127.

On February 24, 2020, AAJ posed questions to its broker regarding whether the Policy would respond to losses caused by COVID-19 and whether it could purchase what it termed a "communicable disease rider."

128.

That same day, an email between AAJ's senior executives noted that AAJ should "continue to monitor the situation" presented by the outbreak of COVID-19, and the AAJ employee in charge of the Event expressed her concern with "insurance and what they'll cover" with respect to any COVID-19-related impacts on the Event.

129.

On March 20, 2020, AAJ's CCO informed the COO that "*I'm contacting vendors and making plans for everything from full in person (not at all likely), hybrid, full virtual and postponement by a month.*"

130.

These emails demonstrate that AAJ understood as of February 24, 2020 the possibility for COVID-19 to give rise to a possible claim related to the Event that AAJ may tender for coverage under the Policy.

131.

By early April 2020, AAJ's initial fears regarding the impact of COVID-19 caused AAJ to pivot the Event from an in-person event to a virtual event.

132.

By April 13, 2020, AAJ had already retained a vendor to present the Event in a virtual format and had cancelled rental contracts with at least two venues for events related to the Event.

133.

AAJ's decision to not proceed with the Event is also demonstrated by its calculated decision to not execute a license agreement for the Convention Center with Events DC, despite multiple follow-ups by Events DC inquiring as to the status of the license agreement with AAJ over March and April 2020.

134.

AAJ chose not to execute the license agreement because while Events DC was following up with AAJ on the status of the license agreement, AAJ was planning to transition the Event to a virtual format and no longer intended to hold the Event in-person at the Convention Center.

135.

Despite communicating with these third parties regarding the inability of the Event to proceed as planned, AAJ failed to provide any notice relating to the Event to Underwriters.

136.

Because AAJ knew of the potential impact of COVID-19 on the Event and the possibility that it may make a claim on the Policy for Cancellation, Curtailment or Rescheduling months before it gave notice to Underwriters and was taking actions indicative of its understanding that the Event could not proceed as planned long before it gave notice to Underwriters, AAJ has breached its obligation to report "as a matter of urgency by the most expeditious means" "any loss

or damage or any circumstance that could result in a claim as a matter of urgency by the most expeditious means" to Underwriters.

137.

AAJ's obligations to provide this notice are a condition precedent to coverage under the Policy.

138.

Accordingly, Underwriters respectfully request that the Court enter a declaratory judgment that AAJ has materially breached Section 10.a Policy, a condition precedent to coverage, and, therefore, that Underwriters are relieved of any coverage obligations to AAJ under the Policy.

## <u>Count II – Declaratory Judgment of No Coverage due to AAJ's Misstatements and Concealments to Underwriters in Connection with its Claim for Coverage</u>

139.

Underwriters re-allege each and every allegation contained in the above paragraphs as though fully set forth herein.

140.

In response to Underwriters' requests for additional information necessary to evaluate AAJ's tender, AAJ sent a letter dated April 30, 2020 to Peter Tocicki with Premier.

141.

In response to a question as to when the decision to cancel the convention was made, AAJ responded that "***The decision was made on April 21, 2020****, after AAJ was informed that day by Linda G. Erickson, Vice President, Sales Division at the Convention Center, **that the facility was being requisitioned and would not be available for the dates of our event**.*" (*Id.* at p. 1, emphasis added).

142.

In response to an inquiry as to why the event was cancelled, AAJ responded that "*The event was cancelled **because the venue for the event was made unavailable due to requisitioning by***

61

*the local authorities* of the Convention Center for use as a medical care facility." (*Id.* at p. 2, emphasis added.) Further, when questioned as to why it was unable to proceed with the Event, AAJ answered that "*The planned Annual Convention had to be cancelled because the event venue became unavailable due to its requisition for use as a care facility*." (*Id.*, emphasis added).

143.

Finally, in response to the question as to what government or civil authority restrictions were in place, AAJ responded, "*While various restrictions were in place nationwide at the time the decision was made, including in the District of Columbia, the existence of any such restrictions was not a reason for the cancellation of the planned Annual Convention*." (*Id.*, emphasis added).

144.

Section 9 – General Conditions and Warranties of the Policy provides, in relevant part:

1. Any fraud, misstatement or concealment in the application attached hereto, or in the making of a claim or otherwise howsoever, shall render this insurance void and all claims hereunder shall be forfeited.

145.

AAJ's April 30, 2020 letter to Premier contains multiple misstatements and concealments of fact that violate Policy Section 9.1.

146.

For example, AAJ's own documents demonstrate that the statement that the decision to cancel the Event was made on April 21, 2020 is false.

147.

April 21, 2020 cannot be the date on which AAJ decided to cancel the Event because, as discussed above, by that date AAJ had already contracted with a vendor to present the Event in a virtual format and had invoked Force Majeure clauses to cancel rental contracts with at least two venues for receptions that were part of the Event.

148.

AAJ would not have retained a virtual event vendor or cancelled rental contract for venues for receptions that were part of the Event if AAJ had not already determined that holding the Event in-person as initially intended was impossible.

149.

While AAJ has not provided documents sufficient for Underwriters to demonstrate the exact date on which AAJ decided to cancel the Event, it is clear based on the documents produced to Underwriters on October 22, 2020 that the date cannot be April 21, 2020, as AAJ stated to Underwriters in its claim materials.

150.

AAJ's statements that "*[t]he loss arises from the necessary decision to cancel AAJ's planned Annual Conference due solely to unavailability of the event venue due to the requisitioning of the Convention Center by local authorities*" is also belied by AAJ's own documents.

151.

In AAJ's notice of cancellation of the rental with the Grand Hyatt, AAJ advised Hyatt that "*AAJ will not be able to hold their Opening Reception on July 11, 2020 due to the impact of the COVID-19 pandemic*."

152.

On April 14, 2020, AAJ informed Hyatt that due to COVID-19, "*the COVID 19 pandemic impact on the DC community changes daily…This clearly makes holding an event at the venue for 2000 guests inadvisable if not impossible.  We can no longer expect even close to that number of members to travel to Washington, DC for such an event.*"

153.

AAJ's communications with Hyatt are unambiguous that AAJ was cancelling the rental due to the impact of COVID-19.

154.

AAJ's communications with Hyatt make no mention of alleged requisition of the Convention Center.

155.

In an email dated April 13, 2020 with the subject "AAJ July Event notification" from Ms. Phalen to Mary Beth Maggio with the National Portrait Gallery, the site of July 13, 2020 reception for the Event, Ms. Phalen states: "*We are writing to notify the Portrait Gallery that AAJ will not be able to hold their Reception on July 13, 2020 due to the impact of the COVID-19 pandemic.*"

156.

Like its communications with Hyatt, AAJ's communications with the National Portrait Gallery blame AAJ's cancellation on the "COVID-19 pandemic" and make no mention of the alleged requisition of the Convention Center.

157.

AAJ's April 30, 2020 statement that the nationwide government or civil authority restrictions were "*not a reason for the cancellation of the planned Annual Convention*" is belied by AAJ's communication with Hyatt just days prior, when AAJ justified its cancellation of the rental contract with Hyatt on the grounds that "*[AAJ] can no longer expect even close to that number of members to travel to Washington, DC, for such an event.*"

158.

Based on the documents that have been provided to Underwriters by AAJ thus far, AAJ's first mention of the use of the Convention Center as an alternate care site as a "requisition" comes in the initial April 21, 2020 notice of the cancellation to Underwriters.

159.

None of the communications from Events DC to AAJ relating to the Event describe Events DC's decision to allow the District of Columbia to license the Convention Center as a "requisition"

– indeed, that word does not appear in any communications from Events DC to AAJ relating to the Event.

160.

Therefore, because AAJ's April 30, 2020 letter to Premier contains both affirmative misstatements and conceals the truth as to when and why AAJ cancelled the Event, pursuant to Policy Section 9.1, the Policy is voided and AAJ has forfeited its claim for coverage under the Policy.

161.

Accordingly, Underwriters respectfully request that the Court enter a declaratory judgment that AAJ's April 30, 2020 constitutes a breach of Policy Section 9.1 and, therefore, that Underwriters are relieved of any coverage obligations to AAJ under the Policy, if any such obligation exists.

**Count III – Declaratory Judgment of No Coverage due to AAJ's Failure to Satisfy the Event Cancellation Insuring Agreement**

162.

Underwriters re-allege each and every allegation contained in the above paragraphs as though fully set forth herein.

163.

In order to trigger coverage under the Policy's principal insuring agreement of Section 2 Coverage A – Event Cancellation, the cause of the loss must have been beyond the control of AAJ and other parties, including "any party who performs or would perform any essential function needed for the successful fulfillment of the Event." (Dkt. 18-2 at p. 11).

65

164.

Events DC is a party who performs "any essential function needed for the successful fulfillment of the Event," given that it is the owner and operator of the Convention Center where AAJ's Event would have been held.

165.

However, the record in this case demonstrates that the District of Columbia established an alternate care facility at the Convention Center due to Events DC's voluntary decision to license the space to District of Columbia in exchange for payment of more than $1.69 million.

166.

Therefore, the unavailability of the Convention Center was not "beyond [Events DC's] control."

167.

Underwriters therefore respectfully request that the Court enter a declaratory judgment that AAJ has failed to carry its burden to demonstrate that its claim for coverage satisfies the insuring agreement of Section 2 Coverage A – Event Cancellation of the Policy.

## Count IV – Declaratory Judgment of No Coverage due to AAJ's Failure to Satisfy the Requisition or Confiscation of Venue Coverage Extension

168.

Underwriters re-allege each and every allegation contained in the above paragraphs as though fully set forth herein.

169.

The Policy's coverage extension for "Requisition or Confiscation of Venue" provides that subject to the Policy's other terms and conditions, Underwriters will indemnify AAJ for cancellations or other losses "solely and directly in consequence of the requisition or confiscation of the Venue by local, national or Federal government authorities." (Dkt. 18-2 at p. 11).

170.

AAJ's claim that the Convention Center was requisitioned by the District of Columbia government fails.

171.

Events DC itself has admitted that no requisition of the Convention Center occurred.

172.

In an October 1, 2020 email from Events DC to AAJ, Events DC replied as follows in response to a question from AAJ for any "directive or request that you or any other managers in your office may have received from the city or Mayor's office or other governmental entity relating to the use of the convention center for medical purposes":

> Events DC received no directive to deploy the alternate care site at the Walter E. Washington Convention Center, which in March 2020 was closed to conferences, expos and the like following the declaration of a public emergency and District of Columbia-imposed restrictions on large gatherings. As there existed space in the building for non-event use, the District, in association with FEMA, the U.S. Army Corps of Engineers, MedStar Health, and United Medical Center, constructed and will operate the site. District Mayor Muriel Bowser announced the project on April 20, 2020.

173.

If Events DC received no "directive to deploy the alternate care site at the Walter E. Washington Convention Center," then there can be no requisition of the Convention Center.

174.

AAJ has not provided any document to Underwriters that establishes that a requisition of the Convention Center occurred.

175.

Events DC voluntarily chose to make the Convention Center available to the District of Columbia for use as an alternate care site and then ultimately negotiated an agreement to license

the use of the Convention Center to the District of Columbia for a licensing fee of more than $1.69 million.

176.

Thus, the use of the Convention Center as an alternate care site was the product of a multi-million-dollar arms-length transaction, not a requisition by the District of Columbia.

177.

AAJ cannot point to any evidence that the use of the Convention Center was the product of anything other than Events DC entering into a commercial transaction with governmental authorities and healthcare providers to rent them space inside the Convention Center to fulfill the authorities' need for space to establish an alternate care site. For this reason, AAJ cannot trigger coverage under the Policy's coverage extension for Requisition or Confiscation of Venue.

178.

Underwriters therefore respectfully request that the Court enter a declaratory judgment that AAJ has failed to carry its burden to demonstrate that its claim for coverage satisfies the Policy's the Policy's coverage extension for Requisition or Confiscation of Venue.

**Count V – (Declaration that No Coverage is Afforded Under the Policy Because the Communicable Disease Exclusion Precludes Coverage)**

179.

Underwriters re-allege each and every allegation contained in the above paragraphs as though fully set forth herein.

180.

The Policy's Communicable Disease Exclusion provides as follows:

> This insurance excludes any loss, damage, cost or expense directly or indirectly arising out of contributed to by or resulting from:
> . . .

> 8.     any infectious or communicable disease in humans which leads to:

(i)     any imposition of quarantine or restriction in movement of people by any government authority or national or international body or agency of any government; or

(ii)    any travel advisory or warning being issued by any government authority or national or international body or agency of any government;

(iii)   Swine Flu A (H1N1) or any mutant variation thereof;

(iv)    any threat or fear of any infectious or communicable disease in humans (which for the avoidance of doubt includes Swine Flu A (H1N1 or any mutation or variation thereof), whether actual or perceived.

If We allege that by reason of this exclusion, any loss is not covered by this insurance the burden of proving the contrary shall be upon You.

181.

The preamble of Section 8 of the Policy provides that that the Policy "excludes any loss, damage, cost or expense directly or indirectly arising out of contributed to by or resulting from" the excluded perils.

182.

COVID-19 is a communicable disease as described by the Communicable Disease Exclusion.

183.

AAJ cancelled the Event that it seeks coverage for because of COVID-19.  On April 10, 2020, AAJ cancelled its Opening Reception for the Event with the Grand Hyatt "due to the impact of the COVID-19 pandemic." On April 13, 2020, AAJ cancelled a Reception scheduled to take place during the Event at the National Portrait Gallery "due to the impact of the COVID-19 pandemic." On April 14, 2020, AAJ's Chief Creative Officer explained in an email to Grand Haytt: "*As you know, the COVID 19 pandemic impact on the DC community changes daily.  Mayor Bowser is now saying that based on modeling the District could see between 93,000 cumulative*

*coronavirus infections and 220 death on the low end to more than 1,000 on the high end and the peak in possible infections and the need for hospital beds will come in late June or early July, later than originally expected.* **This clearly makes holding an event at the venue for 2,000 guests inadvisable if not impossible. We can no longer expect even close to that number of members to travel to Washington, DC for such an event.**"  By April 15, 2020, AAJ had entered into a contract with a platform provider to host a virtual version of AAJ's Event.  By April 17, 2020, Events DC had agreed to license the Convention Center – where AAJ had been discussing with Events DC the prospect of holding AAJ's in-person Event in July 2020 – to the District of Columbia to maintain an alternate care site.  The Licensing Agreement between Events DC and the District of Columbia explains that "the Licensed Area shall serve as an [Alternate Care Site]…and provide a 'sufficiency of care' model meeting critical elements of healthcare for an infectious COVID-19 patient…to address COVID-19 patients…"

184.

Subsections (i) and (ii) of the Communicable Disease Exclusion apply to bar coverage if a communicable disease led to "any imposition of quarantine or restriction in movement of people" or travel advisories or warnings being issued by a "government authority or national or international body or agency of any government" and the loss directly or indirectly arose out of, was contributed to by, or resulted from that disease.

185.

Multiple government authorities, as well as national and international bodies and agencies, issued quarantines, restrictions in movement of people, travel advisories, and travel warnings regarding COVID-19.

186.

Accordingly, because COVID-19 is a communicable disease that led to "any imposition of quarantine or restriction in movement of people" or travel advisories or warnings being issued by a "government authority or national or international body or agency of any government," subsection (i) and subsection (ii) of the Communicable Disease Exclusion apply to bar coverage.

187.

Subsection (iv) of the Communicable Disease Exclusion applies to bar coverage if AAJ's loss directly or indirectly arose out of, was contributed to by, or resulted from a communicable disease that led to the threat or fear of a communicable disease, whether actual or perceived.

188.

COVID-19 is a communicable disease as described by the Communicable Disease Exclusion that led to the threat or fear of a communicable disease and AAJ's loss directly or indirectly arose out of, was contributed to by, or resulted from COVID-19.

189.

Subsection (iv) applies in this matter because COVID-19 is a communicable disease as described by the Communicable Disease Exclusion that led to the threat or fear of a communicable disease,  as evidenced by the fact that, among other things, (1) Mayor Bowser's press release, which AAJ quotes in its Amended Complaint, explains that the Convention Center was being used as an alternate care site due to the fear of and threat of a potential increase in COVID-19 patients that would overwhelm local hospitals: "*While our goal is to never use the Convention Center, we must have the capacity to support a potential increase in COVID-19 patients.*"  (Dkt. 18, ¶ 27); and (2) AAJ's April 14, 2020 email to Grand Hyatt where AAJ explains: "*As you know, the COVID 19 pandemic impact on the DC community changes daily.  Mayor Bowser is now saying that based on modeling the District could see between 93,000 cumulative coronavirus infections and 220 death on the low end to more than 1,000 on the high end and the peak in possible infections and*

*the need for hospital beds will come in late June or early July, later than originally expected. **This clearly makes holding an event at the venue for 2,000 guests inadvisable if not impossible. We can no longer expect even close to that number of members to travel to Washington, DC for such an event.***" Accordingly, because COVID-19 is a communicable disease that led to the threat or fear of a communicable disease, subsection (iv) of the Communicable Disease Exclusion also applies to bar coverage in this matter.

190.

Accordingly, subsection (iv) of the Communicable Disease Exclusion applies to bar coverage in this matter for AAJ's claim.

191.

AAJ has not met its burden under the Policy of "proving to the contrary" that the Communicable Disease Exclusion does not bar coverage.

192.

Underwriters therefore respectfully request that the Court enter a declaratory judgment affirming that the Communicable Disease Exclusion applies to bar coverage for AAJ's claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Underwriters respectfully pray for judgment:

a. That the Court declare that no coverage is afforded under the Policy for AAJ's claim due to AAJ's breach of Section 10.a of the Policy;

b. That the Court declare that no coverage is afforded under the Policy for AAJ's claim due to AAJ's breach of Section 9.1 of the Policy;

c. That the Court declare that no coverage is afforded under the Policy for AAJ's claim because AAJ has failed to demonstrate a covered loss under Policy's the insuring agreement of Section 2 Coverage A – Event Cancellation;

d. That the Court declare that no coverage is afforded under the Policy for AAJ's

claim because AAJ has failed to demonstrate a covered loss under Policy's coverage extension for Requisition or Confiscation of Venue;

e.   That the Court declare that no coverage is afforded under the Policy for AAJ's claim because the Communicable Disease Exclusion precludes coverage under the Policy; and

f.   That the Court award Underwriters such other and further relief as it deems just and proper.

## JURY TRIAL DEMANDED

Underwriters demand a jury trial of all issues so triable.

Respectfully submitted, this 16th day of November, 2021.

TROUTMAN PEPPER HAMILTON SANDERS LLP

*/s/ Thomas S. Hay*
Thomas S. Hay (DC Bar No. 999895)
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
(404) 885-3000 (telephone)
(404) 885-3900 (facsimile)
thomas.hay@troutman.com

Anthony J. Biraglia (DC Bar No. 888273434)
Troutman Pepper Hamilton Sanders LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
202-274-2894 (telephone)
202-274-2994 (facsimile)
anthony.biraglia@troutman.com

Kevin F. Kieffer (admitted *pro hac vice*)
Troutman Pepper Hamilton Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614
(949) 622-2708 (telephone)
(949) 622-2739 (facsimile)
kevin.kieffer@troutman.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2021, a copy of the foregoing Defendants' Amended

Answer and Affirmative Defenses and Counterclaims was filed electronically through the Court's

CM/ECF System on the following:

Christopher T. Nace, Bar No. 977865
Paulson & Nace PLLC
1025 Thomas Jefferson St., NW, Suite 810
Washington, DC 20007
(202) 463-1999 (telephone)
(202-223-6824 (facsimile)
ctnace@paulsonandnace.com

Douglas Y. Christian
Brittany M. Wilson
Ballard Spahr LLP
1735 Market Street
Philadelphia, PA 19103
215-864-8404 (telephone)
215-864-9206 (facsimile)
christiand@ballardspahr.com
wilsonb@ballardspahr.com

This 16th day of November, 2021.

*/s/ Thomas S. Hay*
Thomas S. Hay (DC Bar No. 999895)
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
(404) 885-3000 (telephone)
(404) 885-3900 (facsimile)
thomas.hay@troutman.com

*Counsel for Defendants*